UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CANDICE COLE<br>*Plaintiff,*<br><br>v.<br><br>SANDEL MEDICAL INDUSTRIES, L.L.C.<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. SA-09-CA-0597-H |

**DECLARATION OF STEVE LEATHERMAN**

1. My name is Steve Leatherman. I am over the age of 18 and am competent to testify as to the matters set forth below.

2. I am the President of Sandel Medical Industries, LLC.

3. Sandel is a medical supply company focusing in the area of patient and hospital employee safety.

4. To identify safety issues which need to be addressed, Sandel includes collaboration with healthcare professionals as an essential element of its research and design process.

5. To this end, Sandel's website includes a page where PeriOperative nurses and other hospital personnel are encouraged to submit ideas.

6. **EXHIBIT A** is a true and correct copy of the issue submission page as it was at the time of Plaintiff's submission. The current issue submission page is available at http://www.sandelmedical.com/submit-ideas.asp. Only minor changes have been made since Plaintiff's submission.

7. Sandel has received thousands of submissions through its website and through paper submissions.

8. Sandel holds quarterly review meetings where it reviews the submissions received to determine whether or not the submissions are within the scope of Sandel's product line, whether Sandel has already received a submission for a similar product and whether the product idea is feasible.

9. Based on this meeting, Sandel sends out letters to all submitters.

10. When Sandel decides to proceed with an idea it contacts the idea-submitter and informs them that their idea has been selected. At that point, Sandel sends the submitter a standard idea submission agreement.

11. The type of agreement offered depends on whether the idea submission is proprietary, namely whether or not competitors can freely copy with idea.

12. An idea that is protectable by a United States patent, trademark or copyright is more valuable than an idea that is not proprietary and protectable from copying.

13. An idea that is not protectable by a patent, trademark or copyright and is not proprietary calls for a different agreement.

14. The standard agreement for a non-proprietary submission provides for a payment of $250 upon execution, $500 when the first order for the product is placed up to $4,000 per year for five years which is usually calculated as 2% of net sales.

15. Sandel has a product line of 28 products which it actively markets.

16. Of these 28 products, 12 originated as submissions to Sandel from health care providers who were paid for their submissions.

17. Very few of the idea submissions are novel or unique.

18. Very few of the idea submissions are protectable by a patent, trademark or copyright.

19. Very few of the idea submissions are commercially practicable or marketable.

20. Plaintiff's idea submission was not novel, unique, patentable, trademark protectable or copyrightable, commercially practical or marketable.

21. Currently Sandel only markets 28 products.

22. One of the Sandel idea submitters has a U.S. patent on her idea and is being paid a larger royalty for the life of the patent which is 20 years from the date of filing.

23. In 2004, Sandel introduced a line of products called the "TIME OUT® Products."

24. The products were inspired by the 2004 Joint Commission rule UP.1.03.01 which requires all hospitals accredited by the Joint Commission to perform a "time-out" immediately prior to starting an operation.

25. Beginning in 2004, Sandel began promoting its TIME OUT® Products to hospitals.

26. All TIME OUT® Products are orange in color and have the words "TIME OUT" written on them in bold letters.

27. The line of TIME OUT products is pictured below.




28. The markers, sleeve and hood were marketed prior to 2006.

29. **Exhibit D** is a true and correct copy of Sandel's US Trademark Registration Number 2,966,022 for TIME OUT in the area of "[r]eusable and disposable tools, appliances and accessories used in an operating room during surgical procedures, namely, skin markers for surgical use and paper-based sleeves for use with surgical scalpels," with a date of first use on February 26, 2004.

30. **Exhibit C** is a true and correct copy of a submission made through the Sandel website on February 17, 2006 by Plaintiff.

31. At the time it was made, Plaintiff's suggestion to use the color orange and the words "TIME OUT" were not new to Sandel. Sandel products already used the orange color and the words TIME OUT.

32. The only parts of Plaintiff's submission that were not already in use in Sandel's other TIME OUT® Products was her suggestion that the words TIME OUT be printed on an orange 8 ½ X 11 sheet of paper with an adhesive backing which could be adhered to the draping used by a surgeon.

33. Plaintiff's submission was not practical because it is very difficult to sterilize paper.

34. Moreover, if something adhesive is stuck to the drape in a sterile environment, it would not be able to be removed without risking a tear in the drape which would compromise sterility.

35. Thus, Cole's idea was not feasible on multiple levels.

36. None of these suggestions were incorporated into Defendant's time-out beacon.

37. Plaintiff's idea was not protectable by a patent, trademark or copyright and it is not proprietary and can be freely copied by anyone without any obligation to pay the Plaintiff.

38. Plaintiff's idea was basically a large, 8 ½ X 11, post-it note with the words TIME OUT written on it.

39. **Exhibit A** is a true and correct copy of Sandel's website submission form as it was at the time of Plaintiff's submission.

40. Before submitting an idea to Sandel, submitters must click "I agree" to confirm their consent to the terms listed in **Exhibit A.**

41. **Exhibit E** is a true and correct copy of the letter sent by Lucy B. Reday, the Chairperson of the Issue Review Board at Sandel, to Cole.

42. In 2007, Defendant began development of its Time Out Beacon following a suggestion by a nurse, Lynn Miles, that Defendant market an orange cotton surgical towel with the words TIME OUT on it.

43. An orange cotton surgical towel is capable of being sterilized and is commonly used in a sterile operating room.

44. Lynn Miles is currently being paid pursuant to Sandel's standard idea submission agreement.

45. The Time Out Beacon is a cotton cloth towel measuring 16 X 24 inches.

46. The Time Out Beacon does not have any adhesive backing.

47. Due to the significant differences between Plaintiff's submission and Defendant's Time Out Beacon, no connection was initially drawn between Cole's submission and Sandel's Time Out Beacon.

48. In 2007, Sandel received a complaint from Plaintiff indicating that she believed she was the first submitter of the idea for the Time Out Beacon.

49. At that time, Defendant reviewed Plaintiff's submission and Defendant's Time Out Beacon and concluded that they are not the same idea. Regardless, to assuage Plaintiff's demands, the decision was made to offer Plaintiff its standard idea agreement providing for payments up to $4,000 per year for five years.

50. Defendant decided to offer Plaintiff this agreement in an effort to maintain good will with idea submitters in general.

51. At no time did Defendant base its product on Plaintiff's idea and Plaintiff's submission is not the same as Defendant's product.

52. Sandel has entered into at least twelve agreements to pay submitters for ideas submitted which have been used in the last five years.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of March, 2010.

Steve Leatherman
President
Sandel Medical Industries, LLC