```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
                       SAN ANTONIO DIVISION

CANDICE COLE                        *
                                    *
VS.                                 *  CIVIL ACTION NO.
                                    *  SA-09-CA-0597-H
                                    *
SANDEL MEDICAL                      *
INDUSTRIES, L.L.C.                  *

------------------------------------------------------------------

                   ORAL DEPOSITION OF CANDACE COLE

                         JANUARY 22, 2010

------------------------------------------------------------------

APPEARANCES:

         LAW OFFICES OF KENNETH E. GRUBBS
         4241 Woodcock Drive, Suite C-120
         San Antonio, Texas  78228-1328
         BY:  MR. KENNETH E. GRUBBS,
              Appearing for the Plaintiff;

         HANOR, LIVELY & CERNYAR, PLLC
         750 Rittiman Road
         San Antonio, Texas  78209
         BY:  MR. CHARLES W. HANOR AND REBECCA LIVELY,
              Appearing for the Defendant;

     CANDACE COLE,
          The Witness;

      JEFF COLE,
          Also Present; and

      JANIS LAWS,
          Certified Shorthand Reporter and
          Registered Professional Reporter
          in and for the State of Texas


                        * * * * * *
```

1                              I N D E X

2                                                                    PAGE

3    STIPULATIONS....................................................1
     APPEARANCES.....................................................3
4
     EXAMINATIONS OF CANDACE COLE                                    PAGE
5
     Direct Examination by Mr. Hanor.................................4
6    Cross Examination by Mr. Grubbs................................99
     Redirect Examination by Mr. Hanor.............................102
7    Recross Examination by Mr. Grubbs.............................104
     Redirect Examination by Mr. Hanor.............................105
8

9    EXHIBITS                                                        PAGE

10   1      Submit Issue............................................12
     2      Issue Status............................................29
11   3      My Issues...............................................29
     4      Issue Confirmation......................................32
12   5      4/14/06 Letter from L. Reday to C. Cole.................32
     6      Email chain from C. Cole to J. Penfield.................38
13   7      Email chain from B. Mach to C. Cole.....................39
     8      5/2/08 Letter from B. Mach to C. Cole...................55
14   9      Email chain from B. Mach to C. Cole.....................74
     10     Sandel TIME OUT Sleeve Trademark........................75
15   11     Sandel TIME OUT Hood Trademark..........................76
     12     Sandel No-Roll Skin and Permanent Markers Trademark....77
16   13     Sandel Correct Site Tattoos and Stickers Trademark.....77
     14     Sandel TIME OUT Safety Kit Trademark....................77
17   15     Sandel TIME OUT Beacon Trademark........................79
     16     TIME OUT Trademark......................................80
18   17     Article in StarTribute.com..............................83
     18     Color Laser Photograph..................................83
19   19     TIMEOUT TOWELS Trademark................................84
     20     StarTribune.com Article and White and Black Photo.......84
20   21     SANursing.com Article...................................85
     22     Second Amended Complaint................................86
21
                                                                     PAGE
22
     SIGNATURE AND CHANGES.........................................107
23   REPORTER'S CERTIFICATE........................................108

24                                -o-O-o-

25

1      ORAL ANSWERS AND DEPOSITION of the Witness, CANDACE COLE,
2  who resides in Bexar County, Texas, in answer to questions
3  propounded to her in the above numbered and styled cause, taken
4  by the Defendant before Janis Laws, a Certified Shorthand
5  Reporter and Registered Professional Reporter in and for the
6  State of Texas, at the Law Offices of Kenneth E. Grubbs,
7  4241 Woodcock Drive, Suite C-120, San Antonio, Bexar County,
8  Texas, on the 22nd day of January, A.D. 2010, between the hours
9  of 9:10 a.m. and 12:00 p.m. pursuant to due Notice.
10     It is stipulated and agreed by and between Counsel and
11  the respective parties hereto that the Deposition of the
12  Witness named in the caption hereto, may be taken at this time
13  and place, pursuant to due Notice, and that the said
14  deposition, or any part thereof, when so taken, may be used on
15  the trial of this case the same as if the Witness were present
16  in court testifying in person.
17     It is further stipulated and agreed by and between
18  Counsel and the respective parties hereto that the deposition
19  of the Witness shall be taken pursuant to the Federal Rules of
20  Civil Procedure.
21                      * * * * * *
22
23
24
25

```
09:10  1                    CANDACE COLE,
09:10  2   having been first duly sworn, testified as follows:
09:10  3                  DIRECT EXAMINATION
09:10  4      Q   (BY MR. HANOR) Please state your name for the record.
09:10  5      A   Candace Cole.
09:11  6      Q   And were you formally Candace Rene Moreland?
09:11  7      A   Yes, sir.
09:11  8      Q   Okay.  And that was your maiden name, Moreland?
09:11  9      A   Yes, sir.
09:11 10      Q   Okay.
09:11 11          MR. HANOR:  I'd like to request that the court
09:11 12   reporter tabulate the time for -- each attorney spends
09:11 13   questioning this question.
09:11 14      Q   (BY MR. HANOR) Ms. Cole, you are under oath and that
09:11 15   requires that you tell the truth and give complete responses to
09:11 16   the record that's created here today.  The court reporter is
09:11 17   taking down every word we say.  Sometimes, and -- and I notice
09:11 18   now and I do the same thing, you tend to nod or give a visual
09:11 19   expression.  The court reporter can't take that down.
09:11 20      A   Okay.
09:11 21      Q   So when you do nod like that and you do indicate an
09:11 22   answer, I will ask you to give an oral answer because that's
09:11 23   the only way she can take it down and have a complete record.
09:11 24   Have you met with your attorney prior to this deposition?
09:11 25      A   Yes.
```

```
09:17  1    turpitude?
09:17  2         A    No, sir.
09:17  3         Q    Okay.  Your present occupation is a nurse?
09:17  4         A    Registered Nurse.
09:17  5         Q    You're a Registered Nurse.  And where do you work?
09:17  6         A    Methodist Stone Oak Hospital.
09:17  7         Q    And that's located on?
09:17  8         A    Sonterra Boulevard.
09:17  9         Q    Sonterra.  Okay.  And how long have you been employed
09:17 10    there?
09:17 11         A    With that specific hospital, since February of 2007.
09:17 12         Q    And where were you prior to that?  Where were you
09:17 13    employed?
09:18 14         A    It's part of the Methodist Healthcare System, so I
09:18 15    was at Specialty and Transplant Hospital.  They're a sister
09:18 16    facility.
09:18 17         Q    Right.  And how long have you been with Methodist?
09:18 18         A    I've been with Methodist off and on since 1999.
09:18 19         Q    When did you graduate from nursing school?
09:18 20         A    1999.
09:18 21         Q    So you've -- Your whole career has been with
09:18 22    Methodist?
09:18 23         A    Yes, sir.  I did leave for a year and a half and was
09:18 24    a pool employee with them and worked for a reconstructive
09:18 25    practice -- private practice with physicians.
```

```
09:20  1    A    Yes, sir.
09:20  2    Q    And is that your current position?
09:20  3    A    No, sir.  My current position is Director of Nursing
09:20  4    for Perioperative Services.
09:20  5    Q    And how long have you been Director of Nursing?
09:20  6    A    Two years, approximately.
09:20  7    Q    I'm going to hand you an exhibit and I'm going to --
09:20  8              MR. HANOR:  We'll mark it as Exhibit 1.  There's
09:20  9    a little letter down here at the bottom of it, but that's only
09:20 10    for my outline, Mr. Grubbs, right here.  (Indicating) That's
09:20 11    not meaning anything.
09:20 12              (Exhibit No. 1 marked)
09:20 13    Q    (BY MR. HANOR) All right.  Let me hand you what's
09:20 14    been marked as Exhibit 1 --
09:20 15    A    Okay.
09:20 16    Q    -- and ask if you would please identify this.
09:20 17    A    As it's titled on the paper?
09:20 18    Q    Yes.
09:20 19    A    Okay.  Submit Issue from Sandel Medical Industries.
09:21 20    Q    All right.  This has been filled out and this -- I'll
09:21 21    represent to you this is a document that you -- your attorney
09:21 22    sent to us.  Did you fill out this submit form on the Internet
09:21 23    with the website of Sandel?
09:21 24    A    Yes, sir.
09:21 25    Q    Okay.  Now, I notice that at the bottom of it, it's
```

| | | | |
|---|---|---|---|
| 09:22 | 1 | A | Yes, sir. |
| 09:22 | 2 | Q | Okay.  That's what I need to understand.  Thank you. |
| 09:22 | 3 | A | Yes, sir. |
| 09:22 | 4 | Q | At the time you sub -- I'm going to stick this here |
| 09:22 | 5 | | in the center.  (Indicating) |
| 09:22 | 6 | A | Okay. |
| 09:22 | 7 | Q | Now, I notice this -- that this document -- Let's |
| 09:22 | 8 | | refer to it again. -- it has two pages to it.  Is this the |
| 09:22 | 9 | | correct order for these pages? |
| 09:23 | 10 | A | I -- I assume so, the way that it's labeled at the |
| 09:23 | 11 | | top of the document.  It would be in the way that it was either |
| 09:23 | 12 | | printed or faxed. |
| 09:23 | 13 | Q | All right.  Now, I notice on Page 2 of Exhibit 1, it |
| 09:23 | 14 | | has an "agree" and a "disagree" -- |
| 09:23 | 15 | A | Uh-huh. |
| 09:23 | 16 | Q | -- button on it.  Did you -- When you submitted the |
| 09:23 | 17 | | form, did you hit the "I agree" button? |
| 09:23 | 18 | A | Yes, sir. |
| 09:23 | 19 | Q | Okay.  Now, I notice that -- You say you have not -- |
| 09:23 | 20 | | "you have not yet sold, offered for sale, or licensed my |
| 09:23 | 21 | | submission, and have not revealed my idea to anyone, except |
| 09:23 | 22 | | for: my director."  Who is your director? |
| 09:23 | 23 | A | At that time, it was Virginia Pulliam. |
| 09:23 | 24 | Q | Is she -- Where is Virginia Pulliam now? |
| 09:23 | 25 | A | She's still the Specialty and Transplant Director. |

Case 5:09-cv-00597-HLH   Document 56-8   Filed 04/06/10   Page 8 of 15

Page 15

```
09:24  1      Q   Did you show the -- the -- Exhibit 1 to anyone else?
09:24  2      A   No, sir.
09:24  3      Q   Who besides Sandel did you communicate Exhibit 1 to?
09:24  4      A   At what point, sir?
09:24  5      Q   Well, let's talk in terms of between your submission
09:24  6   in early 2006 and May 24th, 2007, when you printed this out.
09:24  7   Who else had you given this -- the information on this
09:24  8   submission form to?
09:24  9      A   I had not shared this specific information with
09:24 10   anybody.
09:24 11      Q   Okay.  Is the first time you put down a written
09:24 12   description of your idea is when you typed it into the Sandel
09:25 13   form?
09:25 14      A   Yes, sir.
09:25 15      Q   And I'm going to refer over here to another document,
09:25 16   now that I understand this one.  I'm not sure I have the exact
09:25 17   submission date.  Do you recall the exact -- recall the exact
09:25 18   submission date?
09:25 19      A   Yes, sir.  It was February 17th of 2006.
09:25 20      Q   Okay.  Thank you.  Now, was the idea that you
09:25 21   submitted to Sandel on February the 17th, 2006, the use of an
09:25 22   8-1/2 11-inch -- 8 -- 8-by-11-inch orange sheet of paper with
09:25 23   the word "TIME OUT" on one side and adhesive backing on the
09:25 24   other side?
09:25 25      A   Yes, sir.
```

```
09:33  1        Q    Did you ever do a patent search for your idea?
09:33  2        A    No, sir.
09:33  3        Q    Did you ever speak to a patent attorney about your
09:33  4   idea?
09:33  5        A    No, sir.
09:33  6        Q    Why didn't you file a patent application to protect
09:34  7   your idea?
09:34  8        A    Based on the conversation I had had with Jeff and
09:34  9   Chris, Sandel pretty much allows for submissions of their ideas
09:34 10   and works with people in the healthcare field to get those
09:34 11   patient safety issues and things out and so that's what I did.
09:34 12        Q    Did Jeff Penfield and Chris Munden recommend to you
09:34 13   to get a patent lawyer?
09:34 14        A    No, sir.
09:34 15        Q    But they weren't employed -- Neither one -- Neither
09:34 16   Chris nor Jeff were employees of Sandel?
09:34 17        A    They represented Sandel because that's what we were
09:34 18   talking about was their products, specifically their TIME OUT
09:34 19   type of products.
09:34 20        Q    They were -- At the time, in 2006, Jeff Penfield and
09:34 21   Chris Munden were independent sales reps of the Sandel
09:34 22   products?
09:34 23        A    Yes, sir.
09:34 24        Q    And at the time, in 2000 -- February of 2006, when
09:35 25   you came up with your idea, were you using the Sandel TIME OUT
```

10:10 1    Q    And what -- What was that?
10:10 2    A    My CNO at the time -- or COO at the time knew that I
10:10 3    was going to AORN and that this was going to be presented and
10:10 4    we were waiting to find out from Brian if they -- they had
10:10 5    confirmed that it was my submission, and if it was, she wanted
10:10 6    to kind of campaign around it.  It's a really big deal, for
10:10 7    Joint Commission purposes and whatnot, to be able to have a
10:10 8    safety product like this.
10:10 9    Q    Now, what is the Joint Commission purposes?  What is
10:10 10   Joint Commission?
10:10 11   A    They're a -- kind of the accrediting body for
10:10 12   hospitals, the Joint -- CMS, Center for Medicare and Medicaid,
10:10 13   partner with them to go and audit hospitals to make sure we're
10:10 14   following safety practices, quality, risks kind of things, and
10:10 15   they audit us, and a really big focus for them is what we call
10:11 16   time out or surgical pause, to review a line item by line item
10:11 17   of what's getting ready to happen to that patient to prevent
10:11 18   wrong site surgery.
10:11 19   Q    Now, if I understand the Joint Commission, this is a
10:11 20   quasi-government agency?
10:11 21   A    "Quasi" would be very good.
10:11 22   Q    But they have tremendous power in that they accredit
10:11 23   hospitals?
10:11 24   A    Yes, sir.
10:11 25   Q    So in order to -- for a hospital to be accredited,

10:33  1      A    I was supposed to have, but I didn't.  That's why I
10:33  2  ended up sending the email and then I believe he resent it
10:34  3  because I didn't get the original.
10:34  4      Q    Okay.  That's written -- That's a reference of the
10:34  5  email of Exhibit 7, on Page 1, where Brian Mach said, "I mailed
10:34  6  you the paperwork on May 2nd.  It was mailed to
10:34  7  17319 Doublehorn, Helotes, Texas.  Did you receive the
10:34  8  paperwork?  If not, I'll have it resent."
10:34  9      A    Correct.
10:34 10      Q    And that's what happened is that it was resent to
10:34 11  you, and so you would have received it about when?  Shortly
10:34 12  after May 25th, 2008?
10:34 13      A    Somewhere in there, yes, sir.
10:34 14      Q    Okay.  So -- But the -- But the letter of Exhibit 8
10:34 15  and the attachments is the first time Sandel has ever offered
10:34 16  to pay you for your idea?
10:34 17      A    Yes, sir.
10:34 18      Q    And you had had -- not had any discussions with
10:34 19  Sandel about payment prior to May 2nd, 2008?
10:34 20      A    No discussions, just the original submission that
10:34 21  talks about later negotiations.
10:35 22      Q    And this was the later negotiations we're talking
10:35 23  about?
10:35 24      A    Yes, sir.
10:35 25      Q    Okay.  Why did you not accept Sandel's offer of

11:30  1     Q    That's a determination that you would make as a
11:30  2  nurse, right; how it's used?
11:30  3     A    Yes.  Down to the specifics, yes.
11:30  4     Q    Okay.  Prior to submitting your idea to Sandel, had
11:31  5  you had any discussions with them at all about the compensation
11:31  6  you expected?
11:31  7     A    No, sir.
11:31  8     Q    Did you ask them, at any point in time, "How much
11:31  9  compensation am I going to receive?" prior to receiving that
11:31 10  letter of -- in 2008, offering you the agreement?
11:31 11     A    No, sir.
11:31 12     Q    You state in your complaint here that you wouldn't
11:31 13  have submitted the company -- the idea if you'd known the
11:31 14  compensation would be so insignificant.  You considered the
11:31 15  4,000 a year for five years to be insignificant?
11:31 16     A    I considered the up to $4,000 a year to be
11:31 17  insignificant.
11:31 18     Q    Okay.  Going back to Sandel's submission page, which
11:32 19  is Exhibit 1, can you tell me what statements on there you
11:32 20  believe were false at the time you submitted your idea in --
11:32 21  February 17th, 2006?
11:32 22     A    "Any rights in my submission may be given to SMI only
11:32 23  in a future agreement between SMI and myself" and then, "SMI
11:32 24  accepts this submission only for evaluation and SMI and
11:32 25  submitter shall have no further obligations to each other

11:34  1   And had I not been at that dinner, I would have never known
11:34  2   until after the product had already gone out and then it would
11:34  3   have been a different issue.
11:34  4        Q   Do you know whether or not someone else suggested a
11:34  5   TIME OUT towel to Sandel?
11:34  6        A   I do not know.  I just know based on Brian Mach's
11:34  7   review of all the submissions.
11:34  8        Q   Let's refer over to Page 5 of your complaint.
11:34  9        A   Do you want to put that back in your stack?
11:34 10        Q   Yes, ma'am, I do.  One other question:  Regarding
11:34 11   Exhibit 1, if I understand it correctly, this is the only
11:34 12   communication you had with Sandel in 2006.  Right?
11:35 13        A   Yes.
11:35 14        Q   No discussions with anybody over the phone or in
11:35 15   person?
11:35 16        A   No, sir.
11:35 17        Q   And no other communications other than you received a
11:35 18   confirmation that you had submitted, Exhibit 1?
11:35 19        A   Correct.
11:35 20        Q   And that would have been Exhibit 4 that's dated
11:35 21   2/17/2006?
11:35 22        A   The solution number, yes.
11:35 23        Q   I notice here on Page -- Paragraph 1 under "B" on
11:35 24   Page 5 of 11 of Exhibit 22, you state that, "Sometime in the
11:35 25   Fall of 2005, Plaintiff, in a discussion with sales agent

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
                        SAN ANTONIO DIVISION

CANDICE COLE                    *
                                *
VS.                             *   CIVIL ACTION NO.
                                *   SA-09-CA-0597-H
                                *
SANDEL MEDICAL                  *
INDUSTRIES, L.L.C.              *
```

---

REPORTER'S CERTIFICATE FROM THE

ORAL DEPOSITION OF CANDACE COLE

JANUARY 22, 2010

---

I, JANIS LAWS, a Certified Shorthand Reporter and Registered Professional Reporter in and for the State of Texas, do hereby certify that the foregoing deposition is a full, true and correct transcript;

That the deposition transcript of CANDACE COLE was submitted on February 6, 2010, to the Witness or to the attorney for the Witness for examination, signature and returned to me by March 6, 2010.

That the amount of time used by each party at the deposition is as follows:

Charles W. Hanor- (2 hours, 18 minutes)

Kenneth E. Grubbs- (5 minutes)

That pursuant to information given to the deposition officer at the time said testimony was taken, the following

includes counsel for all parties of record:

        Kenneth E. Grubbs, Attorney for Plaintiff;

        Charles W. Hanor, Attorney for Defendant.

        I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

        WITNESS MY HAND, this the 4th day of February, A.D., 2010.

Cert. No. 3460  
Expires: 12-31-08

*(signature)*  
JANIS LAWS  
Certified Shorthand Reporter  
and Registered Professional  
Reporter in and for the  
State of Texas